UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RGN-USF, LLC, et al.,

        Plaintiffs,   Case No. 2:25-cv-10967

v.   Honorable Susan K. DeClercq
     United States District Judge
MEGATRON WORKSPACES OF
MICHIGAN, LLC, et al.,

        Defendants.
_____/

**ORDER SETTING MOTION HEARING AND GRANTING MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY (ECF No. 24)**

On April 3, 2025, Plaintiffs jointly moved for a preliminary injunction to bar Defendants from continuing to operate office spaces under their brand. ECF No. 4. In addition to moving to dismiss the complaint, ECF No. 23, Defendants have since responded with a joint request to conduct expedited discovery ahead of a hearing on Plaintiffs' preliminary-injunction motion. ECF No. 24. Specifically, Defendants ask to serve written discovery on Plaintiffs and take the deposition of Brian O'Doherty, the Senior Vice President of Plaintiffs' parent company. *Id.* at PageID.1119. Plaintiffs oppose Defendants' request, arguing that Defendants fail to demonstrate good cause that the discovery is necessary for resolving the preliminary-injunction motion. ECF No. 27.

As explained below, this Court will schedule a motion hearing for November

5, 2025, and grant Defendants' motion to conduct expedited discovery before that hearing.

## I. BACKGROUND

Plaintiffs RGN-USF (RGN) and Pathway IP II GmbH (PIPS) allege that they own various trade names, service marks, logos, and a system that together forms the Regus brand, through which they provide serviced offices and co-working spaces. ECF No. 1 at PageID.5–6 (describing the "Regus Marks" and "Regus System"). PIPS's affiliate, RGN, "has the exclusive right in the United States to sublicense the use of the Regus Marks and System through franchise agreements." *Id.* at PageID.6.

Plaintiffs allege that they entered into a Multi-Site Development Agreement (MSDA) with Defendant Megatron Workspaces of Michigan in January 2021 to develop Regus offices in the Detroit area. *Id.* at PageID.8. In the MSDA, Megatron agreed to obtain locations and premises for no fewer than four Regus offices as well as sign franchise agreements to develop, open, and operate those Regus offices. *Id.* at PageID.8–9. In exchange, RGN agreed to grant the franchises necessary to do so. ECF No. 1-2 at PageID.52.

Franchisees soon approached RGN hoping to execute agreements on four of those offices. On January 15, 2021, Defendant RGS Workspaces of Michigan entered into a franchise agreement with RGN for the Birmingham Regus Office. ECF No. 22 at PageID.1020; ECF No. 1 at PageID.10. And, on September 21, 2023,

three RGS Workspaces of Michigan affiliates entered into three separate franchise agreements for Regus offices in Southfield, Clinton Township, and Ann Arbor. ECF No. 22 at PageID.1020–21; ECF No. 1 at PageID.10–11.

The January 2021 MSDA ultimately fell apart, Plaintiffs allege, when Megatron failed to live up to its end of the bargain. Specifically, Plaintiffs allege that Megatron breached the agreement by falling behind schedule—"Megatron operated only two *authorized* Regus offices as of October 2024" despite agreeing to develop and open no fewer than four by January 1, 2024. ECF No. 1 at PageID.9. In response to that alleged breach, RGN sent Megatron a notice of default and a notice of termination, informing "Megatron that the [MSDA] was deemed terminated due to its failure to cure the Development Schedule default." *Id.* at PageID.10. Plaintiffs ultimately brought this suit alleging:

- **Count I** – a trademark infringement count against the franchisees in violation of Sections 32 and 43(a) Lanham Act, 15 U.S.C. §§ 1051, *et seq.*;

- **Count II** – a breach of contract count against Megatron for breaching the MSDA;

- **Counts III–VI** – four breach of contract counts against the franchisees for breaching their respective franchise agreements;

- **Counts VII–VIII** – two breach of contract counts against John

> Schmidt for failing to guarantee the performance of the franchisees and for breaching his non-compete agreements; and,

- **Count IX** – an unjust enrichment count against the franchisees and John Schmidt.

*See* ECF No. 1 at PageID.21–43.

Defendants dispute Plaintiffs' allegations. ECF No. 22. at PageID.1023. And they counter that Plaintiffs prematurely terminated their agreements without first providing them with a contractually-mandated opportunity to cure the alleged default. *Id.* at PageID.1023–24. Further, they assert that later, upon service of Plaintiffs' complaint, "Defendants immediately commenced efforts to de-identify the [franchised offices] and ceased all use of or reference to Plaintiffs' trademarks." *Id.* at PageID.1026.

Defendants characterize Plaintiffs' requested injunction as an attempt "to shut down a long-standing franchisee based on contrived events and [Plaintiffs'] own bad faith conduct." *Id.* at PageID.1018. They argue that granting an injunction here would harm the public interest, promote wasting real property, and result in a drastic change to the status quo. *Id.* at PageID.1019.

To prepare for a hearing on Plaintiffs' motion for a preliminary injunction, Defendants seek to conduct limited discovery on an expedited basis. ECF No. 24. Defendants ask this Court for two inquiries. One, they seek to depose Brian

O'Doherty, whose affidavit Plaintiffs submitted in support of their motion for a preliminary injunction. ECF No. 24-1 at PageID.1125. Two, they seek to serve Plaintiffs with a request for production aimed at communications between Plaintiffs and Defendants, Plaintiffs' communications about Defendants, the documents related to or relied upon in drafting O'Doherty's affidavit, and any documents Plaintiffs believes support the need for a preliminary injunction. EFC No. 24-2 at PageID.1131–39. Plaintiffs oppose both of these requests. ECF No. 27.

## II. LEGAL STANDARD

When considering a motion for a preliminary injunction, courts must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 365–66 (6th Cir. 2022) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014)). The first two of those factors are potentially dispositive because "where there is no likelihood of *either* success on the merits *or* irreparable harm, an injunction is unwarranted." *Id.* at 366 (collecting cases).

Civil Rule 65 contemplates that a preliminary injunction shall not be issued unless the adverse party "is given a fair opportunity to oppose the application and to

prepare for such opposition." *Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 484 (6th Cir. 2002) (internal quotation marks and citation omitted) (citing FED. R. CIV. P. 56(a)(1)). What this means, in effect, is that an evidentiary hearing is required when there are disputed questions of fact. *See Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 552–53 (6th Cir. 2007) (collecting cases); *see also S.E.C. v. G. Weeks Sec., Inc.*, 678 F.2d 649, 651 (6th Cir. 1982) (holding—as the leading circuit case on this question—that disputed facts require an evidentiary hearing).

Civil Rule 26(d) governs the timing of discovery requests. The rule provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except … when authorized by these rules, by stipulation, or by court order." FED. R. CIV. P. 26(d)(1). Although the Sixth Circuit has not yet articulated a standard for court-ordered exceptions to that general rule, district courts in this circuit have required parties seeking expedited discovery to show "good cause." *See, e.g.*, *T-Mobile USA, Inc. v. My Wireless Wholesale, Inc.*, No. 11-12334, 2011 WL 13220787 at *2–3 (E.D. Mich. Aug. 19, 2011) (collecting cases); *see also Citizens Bank, N.A. v. Margolis*, No. 20-cv-12393, 2020 WL 5505383 at *2 (E.D. Mich. Sept. 11, 2020) ("The party seeking expedited discovery bears the burden of demonstrating good cause.").

### III. DISCUSSION

As a threshold matter, an evidentiary hearing is necessary because the parties dispute facts material to this Court's consideration of Plaintiffs' motion for a preliminary injunction. *See Tenke Corp.*, 511 F.3d at 552–53. Those factual questions include, among others, (1) whether Plaintiffs would suffer harm if an injunction was not ordered; (2) the extent of that harm; (3) whether Defendants are continuing to operate under the Regus brand; and (4) whether Plaintiffs complied with their contractual notice and opportunity to cure obligations. *See Union Home Mortg.*, 31 F.4th at 365-66. Accordingly, this Court will schedule an evidentiary hearing on Plaintiffs' motion for a preliminary injunction.

With that settled, the only question that remains at this juncture is whether Defendants have shown good cause to conduct expedited discovery in preparation for the evidentiary hearing. *See Citizens Bank, N.A.*, 2020 WL 5505383 at *2. "Jurisdictions differ as to what factors to consider under the good cause standard, but generally they include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for the request; (4) the burden to comply; and (5) how far in advance of the typical discovery process the request was made." *Arab Am. C.R. League v. Trump*, No. 17-10310, 2017 WL 5639928 at *2 (E.D. Mich. Mar. 31, 2017) (collecting cases). Another way to determine whether good cause exists is to ask whether "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the

responding party." *Arista Records v. Does 1–15*, No. 2:07-CV-450, 2007 WL 5254326 at *2 (E.D. Mich. Nov. 5, 2007) (citation omitted).

Defendants have shown that good cause exists to grant their expedited discovery requests for four reasons. First, a motion for a preliminary injunction is pending, a factor that weighs in favor of an expedited schedule. *See Arab Am. C.R. League*, 2017 WL 5639928 at *2. Second and relatedly, Defendants' request is made for the purpose of preparing for a hearing on that motion. *See id.* Third, this case has now been pending for six months, which should reduce the burden faced by Plaintiffs in having to produce discovery on an "expedited" basis. *See id.* Moreover, Plaintiffs have now had nearly five months since Defendants filed their discovery request to identify and review materials outlined in that request. *See id.*

Fourth, Defendants' desired discovery—one deposition and nine document requests—is limited to that which is necessary to prepare for the pending evidentiary hearing. *See id.* In response, Plaintiffs counter that Defendants' requests are overbroad, irrelevant, and unnecessary, ECF No. 27 at PageID.1200–07, but the requests are limited to the factual disputes noted above: that which is necessary to identify Plaintiffs' likelihood of success on the merits and potential for irreparable harm.

Plaintiffs, on the other hand, have demonstrated only minimal prejudice that would result from an expedited discovery schedule. To be sure, Plaintiffs are correct

that the requested productions would impose a "substantial burden" because Plaintiffs would have to spend considerable time and resources reviewing potentially voluminous records. *See* ECF No. 27 at PageID.1207–10 (outlining costs in general terms). But, Plaintiffs have not shown that they would not have to shoulder that burden at some point in this litigation whether that be before or *after* a Rule 26(f) conference. Of course, the rush caused by an expedited schedule will impose an additional, marginal burden; but that is nearly always true whenever any process is expedited. Therefore, Plaintiffs' argument regarding prejudice is unavailing.

With these considerations in mind, this Court finds that Defendants' need for expedited discovery substantially outweighs the prejudice to the Plaintiffs. Accordingly, this Court will grant Defendants' motion for leave, ECF No. 24, and direct Plaintiffs to respond to Defendants' Proposed First Request for Production of Documents, ECF No. 24-2.

### IV. CONCLUSION

It is **ORDERED** that the parties are **DIRECTED** to appear for an evidentiary hearing on Plaintiffs' Motion for a Preliminary Injunction, ECF No. 4, on **Wednesday, November 5, 2025, at 2:30 PM**.

Further, it is **ORDERED** that Defendants' Motion for Leave to Conduct Expedited Discovery, ECF No. 24, is **GRANTED**. To that end, Plaintiffs are **DIRECTED** to make Brian O'Doherty available for deposition and respond to

Defendants' Proposed First Request for Production of Documents, ECF No. 24-2, no later than **Wednesday, October 29, 2025**.

**This is not a final order and does not close the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: October 9, 2025